IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CARL W. GRIFFIN, ) | Civil Action No. 7:20CV00195 |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| MARK ENGELKE, et al.,[1] ) | Chief United States District Judge |
|     Defendants. ) | |

## MEMORANDUM OPINION

Carl W. Griffin, a Virginia inmate proceeding pro se, filed this civil rights action against two defendants, Mark Engelke, the Director of Food Services, and "John or Jane Doe, Corrections Operations Administrator Legislative Liaison," now identified as J. Fritz. In his complaint, Griffin refers to himself as an Afrikan Hebrew Israelite and a Black Orthodox Jew, and he alleges that his religious beliefs require him to observe an Orthodox Jewish diet. He complains that at Red Onion, where he was housed at the time he filed his complaint,[2] he was denied that diet and instead was told that the "Common Fare" diet offered by the Virginia Department of Corrections ("VDOC") met his faith requirements. He asserts claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, et seq., and a 42 U.S.C. § 1983 claim alleging a violation of his First Amendment rights.

---

[1] The Clerk will be directed to update the docket to reflect the correct spelling of the first defendant's name to Engelke. Also, because defense counsel has now identified the defendant identified as "John or Jane Doe" as J. Fritz and filed a motion to dismiss on his behalf, the Clerk will be directed to substitute J. Fritz for the Doe defendant.

[2] Griffin has since been transferred to Keen Mountain Correctional Center. It is not clear if this transfer has resulted in any change to his diet, so as to affect his claim for preliminary injunctive relief, but no party has indicated that it has. In any event, assuming his motion is not mooted by his transfer, the court denies it for the reason set forth herein.

Pending before the court and addressed in this opinion are two motions: (1) a motion for preliminary injunction filed by Griffin; and (2) a motion to dismiss filed by Fritz. For the reason set forth herein, the court will deny the motion for preliminary injunction and deny the motion to dismiss. The court also will give defendants a deadline for filing any summary judgment motion supported by affidavits.[3] If no such motion is filed, Griffin's claims will be set for trial.

## I. BACKGROUND

Much of Griffin's complaint is devoted to background information about his religion. With regard to his dietary beliefs, he explains that he must eat a diet consisting of "kasrut,[4] the body of Jewish dietary law through Rabbinical blessing." Compl. ¶ 11, ECF No. 1. In his complaint, his motion for preliminary injunction, and in affidavits he has filed, Griffin also explains some of the requirements of his religious diet, see, e.g., ECF No 34, although it is unnecessary to detail those here. In essence, though, he contends that his religion requires an Orthodox Jewish diet. See id. ¶¶ 12–15.

For their part, defendants state that "[u]pon information and belief, the Common Fare diet offered by Red Onion is considered [k]ashrut" and meets "the religious requirements as detailed in" Griffin's complaint. ECF No. 27 at 3. But Griffin disputes this. He insists that the "only safeguard" for him to know that his food is "ritualistically clean" is for it to be on a "sealed tray with a rabbinical stamp and the uncut fruit and vegetables." ECF No. 34 at 9.

---

[3] Defendants have acknowledged that discovery is required before summary judgment might be appropriate, and Griffin recently filed both discovery requests and responses, ECF Nos. 33, 34, indicating that discovery is ongoing.

[4] Defendants spell the term "kashrut," and in later filings, so does Griffin.

2

He further contends that the Common Fare diet does not satisfy his religious requirements because the kitchen where the food is prepared is not "ritualistically clean" and because prisoners working there do not adhere to kashrut standards. Id.

Defendants emphasize, though, that Griffin does not observe kosher dietary practices when given the choice. Specifically, defendants' response to Griffin's motion for preliminary injunction contains affidavit and documentary evidence showing that, from September 2019 through June 2020, when they filed their response, Griffin bought numerous non-kosher items from the commissary.[5] These non-kosher items included, for example, various types of chips, candy, a product called "Texas beef ramen soup," chili with beans, hot and spicy summer sausage, and sliced pepperoni. Based on this, they contend that, in addition to what they call a "misunderstanding" about his religious dietary needs and the Common Fare's standards, ECF No. 27 at 3, there is doubt as to whether his religious beliefs about needing a kosher diet are sincere.

Griffin first requested to be placed on an Orthodox Jewish diet in October 2019. Defendant Engelke, VDOC's Director of Food Services, denied his request in a written memorandum that said:

> I am denying your request because it does not meet the standard to be on the diet. Based on the information you submitted, the Common Fare diet will meet your requirements. You may appeal the decision through the Offender Grievance Procedure.

ECF No. 1-1 at 2. Griffin focuses heavily on the fact that the alleged "standard" is not defined, and he later sent a letter to Engelke inquiring about the "standard," to which he apparently

---

[5] The commissary also sells sixty-five kosher items, and Griffin also purchased some of those.

3

received no response. Compl. ¶¶ 56–62. He also complains that Engelke's response was a "form" response, identical to the one sent to other offenders making the same request. ECF No. 1-1 at 7–12 (affidavits from other prisoners and similar forms sent from Engelke to them).

After receiving the memorandum from Engelke, Griffin filed a regular grievance, and Red Onion's Warden deemed the grievance "unfounded," stating that "Mr. Engelke is the final authority." Id. at 5. Griffin appealed to Level II, where defendant Fritz upheld the warden's decision. Mr. Fritz also explained that "[f]urther investigation determined certified Common Fare/Kosher produces are stored, prepared, and served separately from non-kosher produces except fresh vegetables and fruits." ECF No. 1-1 at 6.

This lawsuit followed. As noted, Griffin asserts that defendants' denial of his requested diet violated his rights under both RLUIPA and the First Amendment, and it continues to do so.

## II. DISCUSSION

**A. Motion for Preliminary Injunction**

Griffin seeks a preliminary injunction directing defendants to provide him an Orthodox Jewish diet. Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 22 (2008); League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 249 (4th Cir. 2014). The

remedy may be granted only on a "clear showing" of entitlement to relief. Winter, 555 U.S. at 22. Critically, the movant must satisfy all four requirements to obtain preliminary injunctive relief. Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 345–46 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010). Also, Griffin seeks a mandatory injunction, in that he asks to change the status quo, and mandatory injunctions are "disfavored[] and warranted only in the most extraordinary circumstances." In re Microsoft Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003).

Turning to the first Winter factor, the likelihood of success on the merits, the court notes that, to establish either his First Amendment claim or his RLUIPA claim, Griffin will need to show that the denial of the Orthodox Jewish diet substantially burdens his ability to practice in accordance with his sincerely held religious beliefs. Incumaa v. Stirling, 791 F.3d 517, 525 (4th Cir. 2015) (RLUIPA); Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018) (First Amendment). Given plaintiff's repeated non-kosher purchases at the commissary, there is at least a dispute as to whether his religious beliefs are sincerely held and qualify for protection under RLUIPA and the First Amendment. Notably, moreover, he has not filed anything explaining his non-kosher commissary purchases.

Instead, in Griffin's "response" to defendant's answer—which is not a permitted pleading but which the court has nonetheless reviewed and considered—Griffin states that there are "some prisoners" who have been approved for an Orthodox Jewish diet despite previously ordering non-kosher food from the commissary. He also provides affidavits from two so stating. ECF No. 30-1. Griffin thus contends that relying on his prior purchases to deny him a kosher diet is "arbitrary." He also argues that the mere fact that he has eaten non-

5

kosher food does not mean that his belief and desire for a kosher diet is insincere. Instead, his religion teaches that his actions simply show that he is a sinner who "must struggle to live up right." ECF No. 29 at 8.

In addressing similar facts, a number of courts have concluded that when a prisoner voluntarily and regularly consumes food inconsistent with the diet he claims is required by his religion, that fact can call into question the sincerity of his religious beliefs and also may prevent him from showing a substantial burden on his religious beliefs from being denied the diet. As one court reasoned, there was no substantial burden on plaintiff's religious beliefs where

> the unrefuted evidence establishes that [plaintiff] fails to comply with all of the dietary practices which he claims are dictated by his faith. Cf. McKennie v. Texas Dep't of Crim Justice, No. A–08–CV–906–LY, 2012 WL 443948, at *11 (W.D. Tex. Feb. 10, 2012) (explaining that inmate "can hardly complain" that Defendant's failure to provide him with desired vegan diet "substantially burdens his religion when he supplements his diet with nonvegan food items" from the commissary); Ford v. Fed Bureau of Prisons, No. 09–cv–00882–LTB–BNB, 2011 WL 2415790, at *9–10 (D. Colo. May 24, 2011) (concluding that plaintiff failed to "establish a prima facie case regarding whether he has sincere religious beliefs based on the How to Eat to Live books" when unrefuted evidence demonstrated personal practices that vary from its tenets).

Shabazz v. Johnson, No. 3:12CV282, 2015 WL 4068590, at *10 (E.D. Va. July 2, 2015).

For support of his assertion that it does not matter that he purchases non-kosher meals, Griffin cites to several cases, but they do not convince this court that his regular non-kosher purchases are irrelevant. For example, he relies on Kuperman v. New Hampshire Dep't of Corr., No. 06-CV-420-JD, 2007 WL 1200092 (D.N.H. Apr. 18, 2007) (report and recommendation), but its reasoning does not help Griffin. The Kuperman court expressly

6

acknowledged that prisons have a valid penological objective in preventing insincere inmates from receiving religious diets, such as those who intentionally and knowingly violate their religious diet. But it reasoned that the plaintiff, whose "very sincere belief in Judaism" was "undisputed," should not be removed from his religious diet "because on one occasion he failed to follow" it. 2007 WL 1200092, at *4. Moreover, the plaintiff in Kuperman testified that the non-kosher items he purchased on one occasion were not for his own consumption, but he was strong-armed by another prisoner into obtaining them. Here, defendants are—at least at this stage—questioning the sincerity of Griffin's religious beliefs, and the evidence regarding his commissary purchases is relevant to that issue. Notably, and unlike the plaintiff in Kuperman, Griffin does not dispute that he bought and consumed the non-kosher items repeatedly over a period of many months.

The other case Griffin relies upon, Young v. Lane, 733 F. Supp. 1205, 1209 (N.D. Ill. 1990), rev'd on other grounds, 922 F.2d 370 (7th Cir. 1991), simply reasoned that some plaintiffs' eating of non-kosher food was not "conclusive evidence" of insincerity of their religion, where they were requesting accommodation of other non-dietary practices required by their faith. The Fourth Circuit held as much in Lovelace v. Lee, 472 F.3d 174, 188 (4th Cir. 2006). There, the court concluded that RLUIPA was violated when the plaintiff, who broke the Ramadan fast, was precluded from attending any services or group prayers for twenty-four of the thirty days of Ramadan. The Lovelace court noted that "a lack of sincerity (or religiosity) with respect to one practice" does not automatically mean a "lack of sincerity with respect to others." Id.

7

At this stage of the case, the court is not saying that Griffin's regular purchases of non-kosher food is "conclusive evidence" of insincerity so as to prevent him from succeeding on his claims. See Young, 733 F. Supp. at 1209. Nor is the court definitively concluding that Griffin's regular consumption of non-kosher items means he will be unable to show a substantial burden on his religious reliefs. Cf. Shabazz, 2015 WL 4068590, at *10 (explaining that plaintiff failed to demonstrate a substantial burden, in part because "through his own voluntary food selection, [he failed] to make much effort to follow the religious diet"). But the court concludes that, considering those regular purchases of non-kosher food—which Griffin does not deny he consumed—he has not shown a sufficient likelihood of success on the merits so as to warrant the "extraordinary remedy" of preliminary injunctive relief. Direx Israel, Ltd, 952 F.2d at 816.

For like reasons, Griffin cannot establish the third Winter factor, i.e., that without the court's intervention, he is likely to suffer harm that is "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd., 952 F.2d at 812. Instead, to the extent that he is claiming that he will suffer irreparable harm by having to eat what he alleges are foods that are contrary to his religious diet, he is already purchasing—and apparently regularly consuming—non-Kosher foods at the commissary. Thus, the alleged harm he identifies is not "actual and imminent." See id.

In short, the court concludes that Griffin cannot meet the high standard for obtaining a mandatory preliminary injunction. For these reasons, his motion for preliminary injunction will be denied.

8

**B. Motion to Dismiss**

Defendant Fritz has filed a motion to dismiss the claims against him. A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678.

Fritz seeks dismissal on the grounds that his sole involvement in the case was denying Griffin's grievance at Level II. He relies on cases stating that a prison official's act of responding to a prison grievance generally does not constitute sufficient personal action to be actionable under § 1983 or RLUIPA. ECF No. 26 at 3 (citing, for example, Booker v. Engelke, 7:16CV00084, 2019 WL 1372165, at *4 (W.D. Va. Mar. 26, 2019), and Blount v. Phipps, 7:11CV00594, 2013 WL 831684, at *5 n.12 (W.D. Va. Mar. 6, 2013)).

Those cases do not control here. First of all, both of those cases (and at least most of the cases that they relied upon) were decided on a summary judgment motion, not on a motion to dismiss. Here, moreover, Fritz's response to Griffin's grievance indicates that he "further investigat[ed]" the allegation that the diet was required to accommodate Griffin's religious beliefs, but concluded that it was not. Moreover, if there is no one in the grievance chain with authority to revise the challenged decision, then the grievance process is meaningless. Thus, the court concludes that Griffin has plausibly alleged that Fritz had knowledge of an alleged ongoing violation of Griffin's religious rights and the authority to grant Griffin the diet

he requested, but refused to do so. These facts may turn out to lack evidentiary support, but they are sufficient to survive a motion to dismiss.

### III. CONCLUSION

For the foregoing reasons, the court will deny plaintiff's motion for preliminary injunction and will deny defendant's motion to dismiss. The court also will set a deadline for the filing of any summary judgment motion. An appropriate order will be entered.

The Clerk shall send a copy of this memorandum opinion to Griffin and all counsel.

It is so **ORDERED**.

Entered: October 13, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.10.13 14:01:38 -04'00'

Michael F. Urbanski
Chief United States District Judge

10